IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| KATHY REYNOLDS, | ) CASE NO. 5:20-CV-01876-BYP |
| | ) |
| Plaintiff, | ) JUDGE BENITA Y. PEARSON |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

## I. Introduction

Plaintiff, Kathy Reynolds ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On November 13, 2012, Claimant filed an application for DIB, alleging a disability onset date of September 13, 2007.[1] (ECF No. 9, PageID #: 967). The application was denied initially

---

[1] Plaintiff previously applied for DIB benefits. (ECF No. 9, PageID #: 238). On January 26, 2011, an administrative law judge issued a decision denying that application. (ECF No. 9, PageID #: 147). That decision involved the same parties, facts, and issues, and became final on December 21, 2011 when the Appeals Council issued an unfavorable review and Claimant did

and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 9, PageID #: 205). On December 18, 2014, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 9, PageID #: 114). On January 22, 2015, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 9, PageID #: 65). The ALJ's decision became final on March 22, 2016, when the Appeals Council declined further review. (ECF No. 9, PageID #: 58).

On May 11, 2016, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 9, PageID #: 690). Upon review, the United States District Court adopted the Magistrate Judge's report and recommendation, remanding the case for a new hearing. (ECF No. 9, PageID #: 714). The court ordered the ALJ to consider all factors relevant to the Claimant's allegations of pain in accordance with 20 C.F.R. 1529(c)(3). (ECF No. 9, PageID #: 712, 716).

A new ALJ held a supplemental hearing on June 12, 2018. (ECF No. 9, PageID #: 639). Plaintiff, represented by counsel, an impartial medical expert, and an impartial vocational expert testified. (ECF No. 9, PageID #: 639). On July 23, 2018, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 9, PageID #: 618). The ALJ's decision became final on July 1, 2020, when the Appeals Council declined further review. (ECF No. 9, PageID #: 610).

On August 24, 2020, Claimant filed her Complaint to again challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 14). Claimant asserts one assignment of error:

> (1) The administrative law judge's decision that Plaintiff can perform sedentary work is not supported by substantial evidence

---

not file a civil action in federal court. *Drummond v. Comm'r*, 126 F.3d 837, 841 (6th Cir. 1997) ("An initial determination is binding unless the claimant requests reconsideration or the Commissioner revises its decision." (citing 20 C.F.R. §404.905)).

2

> when the administrative law judge did not fully and fairly evaluate the regulations and SSR 16-3P

(ECF No. 11 at 9).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's supplemental hearing:

> [T]he claimant testified that since her alleged onset date she has had debilitating lower back and left leg pain. She testified that it hurts to move or perform any physical activity. During a typical day, the claimant stated that she does not do anything except sit and watch movies. She said that she does not wash dishes or laundry. She only occasionally goes to the grocery store because her niece likes to do the shopping. She testified that she is able to feed herself, but she only occasionally cooks meals. She also testified that she cannot lift more than five pounds or walk half of a mile. Finally, she stated that she can only stand for short periods.

(ECF No. 9, PageID #: 625).

#### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> In terms of the claimant's alleged back and lower extremity pain, diagnostic test results have confirmed [degenerative disc disease ("DDD")] and disc bulging. In addition, following a workplace injury in 2007, the claimant's back treatment has included one surgical intervention, physical therapy, epidural steroid injections, and chiropractic treatment. . . .
>
> However, during the period of adjudication, conservative treatment and objective medical findings are inconsistent with the alleged severity of the claimant's symptoms. The claimant was evaluated by Robert M. Felden, D.O. at Aultman Center for Pain Management ("Aultman") on March 10, 2011 for complaints of low back pain radiating to the lower extremities. Dr. Felden administered a physical examination. His positive findings included muscle spasms and decreased range of motion in the lumbar region. His findings were otherwise within normal limits. Following his examination, Dr. Felden prescribed the claimant Kadian, Cymbalta, and Neurontin. Dr. Felden also recommended that the claimant use a

treadmill on a daily basis. He recommended that she start by walking 10-15 minutes a day and gradually increase this time. (Exhibit B7F24-25)

The claimant returned to Dr. Felden's office in April 2011 and reported a decrease in her pain. She also reported that she stopped taking Kadian because it caused gastrointestinal upset. In June 2011, Dr. Felden administered a physical examination and noted ongoing muscle spasm and decreased range of motion in the lumbar spine as well as some decreased reflexes in the left lower extremities. The examination was otherwise normal. (Id. at 21-23) On August 16, 2011, the claimant reported that she had stopped taking Cymbalta – due to fears of hallucinations and other potential side effects identified on the medication's packaging. However, she did not confirm experiencing any hallucinations. In addition, the claimant reported no difficulty sleeping and she denied falls and left lower extremity weakness. Physical examination findings were similar to previous results. (Id. at 20)

On August 30, 2011, the claimant underwent an initial consultation with chiropractor Dr. Stephen Pruni. The claimant stated that the following activities increase her pain – bending lying, walking, standing, sitting, moving, twisting, lifting, and sleeping. She also stated that she was tired of falling. Some of these subjective allegations are inconsistent with claimant's previous statements to her physician that she has no difficulty sleeping and does not experience falls. Dr. Pruni provided chiropractic treatment from September 2011 through December 2011. (Exhibit B4F) In the middle of her treatment with Dr. Pruni, the claimant reported to Dr. Felden that she stopped taking her third prescription – Neurontin – due to alleged ineffectiveness. (Exhibit B7F18)

Orthopedic surgeon Jefferey M. Cochran, D.O. evaluated the claimant on December 8, 2011 for her complaints of back and lower extremity pain. (Exhibit B5F2) Dr. Cochran observed the claimant to ambulate unassisted with a narrow based and steady gait. He noted restricted range of motion of the lumbar spine due to complaints of pain. The claimant was able to perform heel and toe raises normally bilaterally. She reported low back pain with straight leg raise testing. Dr. Cochran found the claimant's deep tendon reflexes and motor strength of the bilateral lower extremities to be normal, but observed diminished sensation of the left lower extremity. Dr. Cochran reviewed x-rays of the claimant's lumbar spine and observed evidence of diffuse degenerative changes and narrowing of the L5-S1 and L4-5 disc spaces, but no signs of instability. (Exhibit B5F6-7).

4

> Dr. Cochran attributed the claimant's reported symptoms to [DDD] and disc herniation at L4-5. He discussed various treatment options with the claimant including medication, physical therapy, epidural, nerve root block or face block injections followed by possible radiofrequency ablation. Dr. Cochran indicated that the claimant is not a candidate for surgical intervention[.] The claimant did not pursue physical therapy, epidural, nerve root block or facet block injections as recommended by Dr. Cochran or return to his office for further evaluation or treatment. (Exhibit B5F8)
>
> [O]n February 22, 2012, the claimant returned to Aultman with complaints of increased pain. The claimant was prescribed Flexeril, Amitriptyline, and Diclofenac sodium, as she reported benefiting from medications in the past. An examination revealed stable findings. The claimant has muscle spasms in her lower back, decreased range of motion in the lumbar region, and positive straight leg raising on the left. (Exhibit B7F16-17) On March 27, 2012, the claimant reported improvement in her pain since starting medication. She still had some positive straight leg raising on the left. (Exhibit B4F9-10)
>
> In June 2012, the claimant continued to report that her medications were helpful. (Exhibit B7F12-13) On August 24, 2012, an examination administered by Dr. Felden revealed objective improvement in the claimant's pain. More specifically, straight leg raising was negative and range of motion in the lumbar region was not restricted. (Id. at 10-11) On October 24, 2012, the claimant had some tenderness in her lower back but strength, sensation and straight leg raising was normal. Range of motion in the lumbar spine was full. In addition, the claimant denied weakness or falls. (Exhibit B4F5-6) Finally, on December 27, 2[0]12, the claimant reported no new symptoms and no difficulty sleeping. She also reported that she was tolerating her medications without any side effects. (Exhibit B7F6-7)

(ECF No. 9, Page ID #: 625–27).

### C. Previous District Court's Decision

The undersigned notes that the previous court's decision involved the same facts and issues. As such, the undersigned finds that a summary of the prior decision is necessary. In relevant part, Magistrate Judge Greenburg stated:

5

> The Court has reviewed the administrative decision in its entirety and concludes that ALJ's credibility analysis fails to meet the standard of clarity described in SSR 16-3p, as the decision is marked by the absence of a cohesive and structured credibility analysis. While the Commissioner maintains *post hoc* that the ALJ asserted several reasons for finding Plaintiff's allegations less than fully credible, the reasons now being cited by the government, instead of being clearly articulated by the ALJ and precisely supported by the record, were sprinkled haphazardly throughout the decision. . . . Further, insofar as it is possible to extract reasons from the administrative decision, they are unreasonable and/or lacking in factual or legal authority.

(ECF No. 9, PageID #: 702).

The court then discussed each reason provided and explained why it was rejected. First, the Commissioner stated that the ALJ discredited Claimant because "Plaintiff consistently sought conservative treatment and she reported a positive response to that treatment." (ECF No. 9, PageID #: 702). The court concluded that there were no legal or factual bases to discredit Claimant based on her conservative treatment results. The court reviewed the record and concluded that during the period in question, Plaintiff's pain ratings fluctuated erratically. Further, the court "disagree[d] with the notion that a regimen of conservative treatment is necessarily inconsistent with a severe disability." (ECF No. 9, PageID #: 706). The court stated that there needed to be additional reasons that reasonably undermined Claimant's credibility. (ECF No. 9., PageID #: 706).

Second, the Commissioner argued "Plaintiff stopped taking several pain medications and declined recommended treatment." (ECF No. 9, PageID #: 703). The court rejected this argument, stating "it is not apparent how Plaintiff's discontinuation of these medications bears on her credibility at all, since it is not evident that Plaintiff unreasonably refused to follow medical advice. Rather, as the evidence showed, she based her decision to cease using these medications in light of their side effects or ineffectiveness." (ECF No. 9, PageID #: 707). The ALJ failed to articulate how this fact, then, bared on her credibility. Additionally, the ALJ did not discuss Claimant's

6

rejection of treatment options "recommended" by Dr. Cochran, but even if she did, the court found that it was an unreasonable reason to discredit Claimant. The court discussed Dr. Cochran's "recommendations" and stated they were not really recommendations, but discussions of options, which included the possibility of injections. Moreover, Claimant had tried the discussed treatments in the past and had no improvements or negative outcomes. Given this evidence, the court found "it was unreasonable for the ALJ to challenge [Claimant's] credibility based on [Claimant's] failure to follow up on the additional treatment options, which had not helped her in the past." (ECF No. 9, PageID #: 709).

Finally, the Commissioner argued Claimant's allegations were "contrary to the objective evidence." (ECF No. 9, PageID #: 702). Commissioner asserted that there was no evidence that Claimant walked with an abnormal gait or of diminished motor strength. Further, straight leg raises tests were generally negative. (ECF No. 9, PageID #: 702). The court disagreed. In addition to the ALJ's failure to clearly state that Claimant was incredible because the evidence contradicted her allegations, the court reasoned that it was not "self-evident" that the absence of a finding that Claimant had an abnormal gait necessarily undermined her claim of debilitating pain. (ECF No. 9, PageID #: 710).

The court concluded that the ALJ failed to discuss the relevant factors set forth in 20 C.F.R. § 404.1529(c)(3). It noted that there was relevant evidence regarding Claimant's daily activities, a history of pain ratings, and circumstances that aggravated Claimant's symptoms that were not discussed. (ECF No. 9, PageID #: 712).

**IV.    The ALJ's Decision**

Upon remand, the ALJ made the following findings relevant to this appeal:

> 5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured the claimant had

7

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: The claimant could only occasionally climb ramps and stairs. [Sh]e could never climb ladders, ropes, or scaffolds. [Sh]e could only occasionally climb ramps and stairs. [Sh]e could never climb ladders, ropes, or scaffolds. [Sh]e could only occasionally balance, stoop, kneel, crouch, and crawl. The claimant could never work at unprotected heights or around moving mechanical parts.

(ECF No. 9, PageID #: 624). The ALJ reasoned:

> The exertional and postural restrictions set forth in the residual functional capacity accommodate the consistent clinical findings of examining sources. Physical examinations of the claimant by her treating physicians and Dr. Pruni consistently observed the claimant's tenderness to palpation and spasm of the lumbar paraspinal muscles and diminished range of motion of the lumbar spine[.] On occasion, the claimant demonstrated unrestricted and painless range of motion of the lumbar spine. Physicians also observed sensory deficits of the claimant's left lower extremity on multiple examinations and found her deep tendon reflexes at the patella and Achilles to be diminished. However, the claimant has not exhibited signs of more significant neurological deficits. No treating physician observed abnormalities of the claimant's gait or station and [o]n December 8[,] 2011, Dr. Cochran noted that the claimant walked with a narrow based and steady gait. (Exhibits B4F, B5F, and B7F) Similarly, no treating physicians have observed diminished motor strength or atrophy on examination. Rarely, the claimant exhibited positive straight leg raise on examination. Generally, straight leg testing throughout the period for adjudications was negative. (Exhibits B5F, B7F, and B16F).

(ECF No. 9, PageID #: 627). Regarding the factors found in 20 C.F.R. § 404.1529(c)(3), the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. . . .
>
> Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to engage in a complete discussion of

8

> all factors relevant to the claimant's allegations of pain in accordance with 20 C.F.R. 404.1529(c)(3). . . .
>
> Turning to claimant['s] alleged daily activities, she has consistently stated that during the period of adjudication her daily activities were limited to bathing, watching television, and occasionally preparing meals. She stated that she did no other chores, rarely shopped for groceries and did not socialize. These subjective allegations suggest significant physical limitations but are inconsistent with the other factors described in 20 CFR 404.1529(c)(3). More specifically, the claimant treated with a chiropractor only very briefly during the period of adjudication and did not seek any other form of treatment apart from medications prescribed by Aultman physicians during the period for adjudication. While additional treatment modalities including epidural steroid and facet block injections were recommended, the claimant did not pursue these recommendations. In terms of claimant's medication regimen, as discussed above, in 2011 she discontinued at least three medications on her own without the consent of her physicians. In addition, she has reported improvement in her symptoms in response to medications first prescribed in February 2012 and has consistently denied side effects associated with this medication regimen. The conservative treatment modalities offered to the claimant and her statements as to the effectiveness of such treatment are inconsistent with her allegations as to the severity of her functional limitations. Therefore, the undersigned does not find the claimant's statements regarding her limited daily activities persuasive. (Exhibits B5F8 and B7F4-12)

(ECF No. 9, PageID #: 625, 628).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

9

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the

claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

Claimant raises one issue on appeal: whether the ALJ's decision that Claimant can perform sedentary work is supported by substantial evidence when the ALJ did not conduct a proper analysis pursuant to SSR 16-3P. (ECF No. 11 at 1). Essentially, Claimant asserts that the ALJ improperly discredited Claimant's subjective complaints. She argues that the analysis is not supported by the objective evidence and the ALJ failed to give any meaningful discussion of the factors set forth in SSR 16-3P. Commissioner responds that the ALJ properly credited Claimant's allegations about the severity of her condition and limited her to a reduced range of sedentary work. Moreover, the Commissioner suggests that the ALJ's credibility determination was supported by substantial evidence.

### 1. The ALJ's Credibility Determination

In determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. The ALJ is required to use a two step-process. *Id.* at *3. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* Second, the ALJ evaluates the intensity, persistence, and limiting effects of a claimant's symptoms. *Id.* at *4. In so doing, the ALJ should consider the evidence provided and, when relevant, seven factors listed in SSR 16-3p. The factors are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,

11

effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or symptoms; (5) treatment other than medication for the relief of pain or symptoms; (6) any other measures used to relieve pain or symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain and other symptoms. *Id.* at *7–8. The ALJ need not discuss all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). An ALJ, however, "is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8.

The ALJ's determination of credibility is given "great weight" because she, unlike the Court, has the opportunity to observe the claimant's demeanor while testifying. *Jones*, 336 F.3d at 476 (citations omitted). However, the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible,

12

he must clearly state his reasons for doing so."). "[T]he ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio Apr. 24, 2019) report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019) (citing *Rogers*, 486 F.3d at 248–49).

Here, the ALJ found Claimant's daily activities and subjective allegations of pain "inconsistent" with the other factors described in 20 C.F.R. § 404.1529(c)(3). Upon review, the Court ascertains four reasons that the ALJ discredited Claimant's subjective allegations of her symptoms:

1. Claimant rejected additional treatment recommended to her
2. Claimant discontinued three medications without the consent of her physicians
3. Claimant's conservative treatment was effective
4. Claimant's alleged symptoms are inconsistent with the objective medical findings

The Court will discuss each one to determine whether it is adequately explained and supported by the evidence.

### a. Reason #1: Claimant Did Not Pursue Additional Treatments

First, the ALJ stated, "While additional treatment modalities including epidural steroid and facet block injections were recommended, the claimant did not pursue these recommendations." (ECF No. 9, PageID #: 628). She also stated that Claimant treated with a chiropractor only very briefly "and did not seek any other form of treatment apart from medications prescribed by Aultman physicians during the period of adjudication." (ECF No. 9, PageID #: 628).

This reason was proffered in the original ALJ's decision and was rejected by Magistrate Judge Greenburg. Judge Greenburg first disagreed with the word "recommended." Dr. Cochran did not

13

recommend additional treatments. His treatment notes indicate that he discussed possible treatments and that Claimant should consider facet blocs. (ECF No. 9, PageID #: 378). There was no evidence, therefore, that Claimant refused treatment or failed to follow her doctor's orders. Moreover, as before, the ALJ "fails to acknowledge that Plaintiff had tried those various treatment options in the past, and either had no improvement or a negative outcome as a result." (ECF No. 9, PageID #: 709). Claimant had previously received multiple epidurals and nerve blocks with no real improvement. She also went to physical therapy and a chiropractor. (ECF No. 9, PageID #: 650). Judge Greenburg concluded that "[g]iven this evidence, it was unreasonable for the ALJ to challenge [Claimant's] failure to follow up on the additional treatment options, which had not helped her in the past." (ECF No. 9, PageID #: 709). This Court agrees and finds that this was not a proper reason to discredit Claimant's allegations. *See Rogers*, 486 F.3d at 249 ("[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence.").

    b. **Reason #2: Claimant Discontinued Medications**

Second, the ALJ stated, "In terms of claimant's medication regimen, as discussed above, in 2011 she discontinued at least three medications on her own without the consent of her physicians." (ECF No. 9, PageID #: 628). This reason was proffered and rejected by Judge Greenburg for two reasons. (ECF No. 9, PageID #: 707). First, the original ALJ did not explain why discontinuing medication undermines Claimant's credibility. Second, Claimant discontinued the medications because of their side effects or ineffectiveness. Judge Greenburg found that it was not clear, therefore, how discontinuing that medication undermined Claimant's credibility. After remand, the ALJ did not provide any additional information to support this reason. There was still no explanation as to why discontinuing medication that was ineffective or caused certain side

14

effects was a reason to discredit Claimant. Claimant, when prescribed effective medication without side effects, has had no problem sticking to her medication regimen. She simply stopped taking medications that were either not effective or caused unwanted side effects. The Court, therefore, finds that this was not a sufficient reason to discredit Claimant's allegations of pain.

   c. **Reason # 3: Claimant's Conservative Treatment Has Been Effective**

Third, the ALJ stated

> [Claimant] has reported improvement in her symptoms in response to medications first prescribed in February 2012 and has consistently denied side effects associated with this medication regimen. The conservative treatment modalities offered to the claimant and her statements as to the effectiveness of such treatment are inconsistent with her allegations as to the severity of her functional limitations.

(ECF No. 9, PageID #: 628). A similar reason was proffered by the original ALJ. Judge Greenburg rejected it because: 1) it was not clearly articulated, and 2) the ALJ failed to identify evidence that supported this conclusion.

This time, however, the ALJ made her finding explicit, specifying that treatment had been effective only since February 2012. Additionally, the ALJ cited to Claimant's pain management interval notes that support this finding. (ECF No. 9, PagID #: 628). The notes indicate that in February 2012, Claimant rated her pain as an eight out of ten. (ECF No. 9, PageID #: 410). Thereafter, Claimant was prescribed Flexeril, Amitriptlyine, and Diclofenac sodium. (ECF No. 9, PageID #: 410–11). Since February, Claimant consistently reported improvement in her pain. Only once after beginning the medication did Claimant's pain increase back to an eight out of ten. (ECF No. 9, PageID #: 406). On three separate occasions after February, Claimant rated her pain as only a four out of ten. (ECF No. 9, PageID #: 400, 402, 408). TR 351, 345, 343). Thus, Claimant's own allegations of pain evidence that treatment had been working. The ALJ also noted objective

15

evidence that showed Claimant's pain improvement. She stated that on August 24, 2012, Dr. Felden's examination revealed negative straight leg raises and a non-restricted range of motion in the lumbar region. (ECF No. 9, PageID #: 627). It was proper, therefore, for the ALJ to discredit Claimant's allegations of pain due to the effectiveness of her medication and the improvement of her symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (instructing the ALJ to consider the effectiveness and side effects of any medications); *Dunn v. Comm'r of Soc. Sec.*, No. 1:15-cv-176, 2016 WL 4194131, at *9–10 (S.D. Ohio July 15, 2016) (considering effective treatment a sufficient reason to discredit the claimant's allegations of pain).

### d. Reason #4: Claimant's Allegations are Inconsistent with the Objective Evidence

Finally, the ALJ asserted that "conservative treatment and objective medical findings are inconsistent with the alleged severity of the claimant's symptoms." (ECF No. 9, PageID #: 625). After the original ALJ's decision, the Commissioner proffered a similar reason. The Commissioner asserted that Claimant's allegations were contrary to the objective evidence because there was no evidence that Claimant walked with an abnormal gait or had diminished motor strength and Claimant's straight leg raise tests were generally negative. (ECF No. 9, PageID #: 703). Judge Greenburg rejected this argument because (1) the ALJ never stated that the objective medical evidence was contrary to Claimant's allegations of pain, falling short of the required standard of clarity, and (2) neither the court nor the ALJ had the medical expertise to determine that a finding that Plaintiff did not have an abnormal gait necessarily undermined her claims of pain. (ECF No. 9, PageID #: 710).

Here, the ALJ clearly stated that Claimant's allegations of pain were inconsistent with the medical evidence, thereby meeting the clarity requirements. In fact, she started her discussion of the medical evidence by stating "conservative treatment and objective medical findings are

16

inconsistent with the alleged severity of claimant's symptoms." (ECF No. 9, PageID #: 625). Then, throughout her discussion of the relevant medical evidence, the ALJ pointed out where she discredited Claimant. She acknowledged the medical evidence consistent with Claimant's pain, but also described evidence that did not support total disability. For example, she stated that while Dr. Felden did find muscle spasms and decreased range of motion in Claimant's lumbar region, his findings were otherwise normal. (ECF No. 9, PageID #: 625–26). Similarly, the ALJ recognized that objective evidence consistently confirmed Claimant's tenderness to palpation, spasm of the lumbar paraspinal muscles, and diminished range of motion of the lumbar spine. She appreciated that physicians also observed sensory deficits of Claimant's left lower extremity and found her deep tendon reflexes at the patella and Achilles to be diminished.

However, the ALJ also found it important that the Claimant did not exhibit signs of more significant neurological deficits. No treating physicians observed diminished motor strength or atrophy on examination and Claimant's straight leg testing was generally negative. "Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record.'" *Minor v. Comm'r of Soc. Sec.*, No. 5:18 CV 2233, 2019 WL 6525601, at *29 (N.D. Ohio Dec. 4, 2019) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Thus, the ALJ was free to discredit Claimant's allegations of severity based on the absence of more severe objective medical evidence. It is the not the Court's place to reweigh the evidence. *See Delong v. Comm'r of Soc. Sec.*, 2:18-cv-368, 2019 WL 409364, at *10 (S.D. Ohio Feb. 1, 2019) ("The ALJ's findings were within the ALJ's permissible 'zone of choice,' and the Court will not reweigh the evidence." (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009))).

17

Additionally, the ALJ noted that Claimant's allegation that bending, lying, walking, standing, sitting, moving, twisting, lifting, and sleeping aggravated her pain. (ECF No. 9, PageID #: 626). However, she explained that some of those allegations were inconsistent with Claimant's previous statements that she had no difficulty sleeping and did not experience falls. (ECF No. 9, PageID #: 626). A Claimant's inconsistent reporting of symptoms is reason to discredit her pain allegations. *See Blevins v. Comm'r of Soc. Sec.*, No. 1:15-cv-717, 2017 WL 769873, at *7 (S.D. Ohio Feb. 8, 2017) ("[A]n ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record . . . ."); *Hawk v. Astrue*, 4:11CV196, 2012 WL 3044291, at *6 (N.D. Ohio July 25, 2012) ("An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence." (citations omitted)).

Importantly, unlike the original ALJ, the ALJ here considered many of the factors listed in SSR 16-3p when making this determination. She considered Claimant's daily activities, medications, and treatments. She also noted factors that precipitated and aggravated Claimant's symptoms. *See Minor*, 2019 WL 6525601, at *31 ("Although the ALJ must 'consider' the listed factors, there is no requirement that she discuss every factor." (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009))). Finally, she recognized that the Claimant was in a great deal of pain and therefore limited Claimant to only sedentary work.

Accordingly, the Court is satisfied that the ALJ considered all of the relevant evidence and that a reasonable mind might accept the evidence as adequate support for the ALJ's credibility finding. The ALJ clearly articulated her reasoning. While the Court rejected two of the ALJ's reasons for discrediting Claimant, the ALJ provided two sufficient reasons that were supported by substantial evidence. There exists, therefore, no compelling reason for the Court to disturb that

18

finding. *See Cross*, 373 F. Supp. 2d at 732 ("A court may not disturb the ALJ's credibility determination absent compelling reason.").

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 27, 2021

                                            s/ *Carmen E. Henderson*
                                            CARMEN E. HENDERSON
                                            U.S. MAGISTRATE JUDGE

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).